**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

CHRISTOPHER HUTCHINSON,

    Plaintiff,

    v.

DR. AKINLAWON AYENI,
DR. LAUREN DRAKE,
CAROLYN SCRUGGS,
MS. BETHANY CORNACHIA,
COMMISSIONER PHILLIP JORDAN,
DR. AFSHAN ASHAI,[1]

    Defendants.

Civil Action No.:  PX-25-3062

**MEMORANDUM OPINION**

Plaintiff Christopher Hutchinson, an inmate at Western Correctional Institution ("WCI"), has filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging unconstitutional denial of medically necessary treatment for his opioid drug use disorder, in violation of his Eighth Amendment right to remain free from cruel and unusual punishment.  Defendants Akinlawon Ayeni, M.D., Lauren Drake, M.D., and Afshan Ashai, M.D. (collectively "Centurion Defendants") move to dismiss the Complaint or alternatively for summary judgment to be granted in their favor. ECF No. 14.  Defendants Department of Public Safety and Correctional Services ("DPSCS") Secretary Carolyn J. Scruggs, WCI Warden Bethany Cornachia, and DPSCS Commissioner J. Philip Morgan, (collectively "Correctional Defendants") separately move to dismiss the Complaint as to them.  ECF No. 18.  In response, Hutchinson moves for an "extension of time" to conduct discovery, ECF No. 17, and opposes the Correctional Defendants' motion.  ECF No. 23.  Lastly,

---

[1]    The Clerk will be directed to correct the docket to reflect the full and correct spelling of Defendants' names.

Hutchinson seeks leave to add defendants, amend the Complaint, and for court-appointed counsel. ECF Nos. 9, 23, 26. A hearing is not necessary. *See* D. Md. Local R. 105.6 (2025). For the reasons stated below, the Centurion Defendants' motion is denied, the Correctional Defendants' motion is granted, Hutchinson's motions to add parties and amend the pleading are denied without prejudice, and his motion for court-appointed counsel is granted.

## I.    Background

The Court takes the Complaint facts as true and most favorably to Hutchinson. Hutchinson suffers from longstanding opioid addiction both in and out of prison, marked by periods of sobriety and relapse. ECF No. 1 at 3-4. On August 16, 2024, while housed at WCI, Hutchinson overdosed, was hospitalized, and lost his prison job. *Id.*; *see also* ECF No. 14-4 at 144, 135; ECF No. 14-3 at 45. Hutchinson asked WCI's psychiatrist, Dr. Afshan Ashai, if he could be placed in the Medication Assisted Treatment ("MAT") program to help stave off the harsh physical effects of opioid withdrawal. But because "WCI currently does not initiate" such a program for inmates not already in the MAT program upon arrival, Hutchinson was denied admission. ECF No. 1 at 5; *see also* ECF No. 14-3 at 39; ECF No. 14-4 at 120 ("Centurion Medical Team" letter dated November 22, 2024, to Hutchinson explaining that "WCI currently does not initiate a program for suboxone and we only maintain the current patients already receiving the medication."). The following month, Hutchinson again requested "basic information on substance abuse disorder and opioid abuse disorder." *Id*. at 113. He received information in the mail. *Id.* But nothing suggests he was assisted beyond that.

Consequently, Hutchinson was forced to go through withdrawal without any medical intervention. ECF No. 1 at 10. This is, as he puts it, "abject debilitation of the mind and body" for weeks on end. *Id.* His medical records support as much. In late March 2025, Hutchinson's

mother passed away suddenly. During his appointment with Dr. Ashai, Hutchinson described "craving drugs," and, a week later, disclosed his use of opioids and admitted that he needed help. ECF No. 14-4 at 56. Apart from increasing the medication dosage to treat Hutchinson's depression, Dr. Ashai took no other action. *Id*. at 58.

Hutchinson's addiction continued to dominate his life. He sold all his personal possessions in exchange for drugs. ECF No. 1 at 11. On April 9, 2025, he was brought to the medical unit unresponsive, having overdosed again. ECF No. 14-4 at 52. Three weeks later, on April 28, 2025, Hutchinson complained, through a sick call slip, that he was suffering the effects of opioid withdrawal "for the second time this month." ECF No. 14-3 at 25. He described having body aches, insomnia, nausea, vomiting, and diarrhea that began when he ran out of the suboxone he had purchased from other inmates. *Id*. Hutchinson further described that he had similarly suffered over 20 times in the last two years as he tried to withdraw on his own. *Id*. By separate sick call slip on the same day, Hutchinson asked why medical staff were denying him opioid use disorder treatments. *Id*. at 24.

Hutchinson complained similarly on May 20 and 29, 2025, without meaningful response. ECF No. 14-3 at 21; ECF No. 14-4 at 38, 41. Likewise, on June 10, 2025, Hutchinson disclosed to another prison physician that he was buying suboxone and using it daily, and while he wanted to stop, the physical symptoms of withdrawal were too intense. ECF No. 14-4 at 28-32. Again, Hutchinson requested the MAT program, to which the doctor responded that "no patients are being initiated into MAT at WCI" if not already in the program when they arrived. *Id*. Although the doctor promised to prescribe medication to ease withdrawal symptoms, he did nothing. *Id.* at 31.

Despite this, Hutchinson continued candidly disclose his drug use and desire for treatment, and share the terrible withdrawal symptoms that he suffered when he tried to avoid opioids without

3

medical assistance.  ECF No. 14-3 at 14; ECF No. 14-4 at 21-22 (June 21, 2025); ECF No. 14-4 at 13 (July 1, 2025).  Medical staff only occasionally prescribed medication to address isolated symptoms.

From this, Hutchison contends that Defendants' delay or denial of treatment for his opioid withdrawal, including the refusal to do anything to place him in the MAT program, amounts to cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution.  ECF No. 1.  The Centurion Defendants argue that summary judgment in their favor is proper because they did not knowingly fail to provide constitutionally adequate medical care, and that they bear no responsibility for Hutchinson's exclusion from MAT program.  The Correctional Defendants contend that no complaint facts make plausible their personal participation in Hutchinson's course of care.  The Court considers each motion separately, starting with the Correctional Defendants.

## II.    Correctional Defendants' Motion

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint.  To assess whether the claims survive dismissal, the court accepts the complaint facts as true and construed most favorably to the plaintiff.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "However, conclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'"  *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above a speculative level."  *Twombly*, 550 U.S. at 555. "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'"  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

4

Although pro se pleadings are construed generously to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), a court cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted)). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009).

The Correctional Defendants principally contend that because they had no individual involvement in Hutchinson's drug treatment, they cannot be liable under 42 U.S.C § 1983 for any claimed denial of constitutionally adequate medical care. ECF No. 18-2. It is well settled that prison supervisors cannot be liable for constitutional torts simply because their employees deprived the plaintiff of his constitutional rights. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Rather, some facts must make plausible that the defendant-supervisor knew the supervisee had engaged in conduct that posed an unreasonable risk of constitutional injury, and the supervisor failed to respond in such a manner that amounts to deliberate indifference or tacit authorization of the subordinate's bad acts. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). *See also Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries

they inflict on those committed to their care.'") (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

The Complaint, however, offers little more than legal conclusions couched as fact. The Complaint avers that Scruggs was the "boss" of DPSCS, and so she "must" be held liable for "the subordinates' unconstitutional conduct. ECF No. 1 at 17. Similarly, the Complaint faults Commissioner Morgan for being the "policy maker," and identifies Warden Cornachia as responsible for "maintaining" the policies. *Id*. at 18-19. But nothing suggests that they knew of any such unconstitutional practices particular to Hutchinson's provision of care, including denial of the MAT program, or that they acted with deliberate indifference to the same. Mere generalized involvement in setting or enforcing "policy" is not enough to survive dismissal. Because the Complaint fails to state a claim as to the Correctional Defendants, they are dismissed from suit.

### III.    Centurion Defendants' Motion

The Centurion Defendants seek summary judgment in their favor and append 600 pages of Hutchinson's medical records. Hutchinson objects and makes the astute point that discovery is needed to understand the origin and application of the alleged unconstitutional exclusion of certain inmates from the MAT program. ECF No. 17 at 2. Federal Rule of Civil Procedure 56(d) "requires 'that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" *Tyree v. United States*, 642 F. App'x 228, 230 (4th Cir. 2016) (quoting *Nguyen v. CAN Corp*., 44 F.3d 234, 242 (4th Cir. 1995)). The Court should refrain from reaching "premature summary judgment motions" where further discovery is necessary to aid in the decisional process. *McCray v. Md. Dep't of Transp., Md. Transit Admin*., 741 F.3d 480, 484 (4th Cir. 2014) (quoting *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt*., 721 F.3d 264, 281 (4th Cir. 2013)). *See also Pisano v. Strach*, 743

F.3d 927, 931 (4th Cir. 2014).  For the following reasons, the Court agrees that it should not reach summary judgment and instead treat the motion as one to dismiss.  Further, the Court will not dismiss the claim.

An Eighth Amendment denial of medical care claim shall proceed where complaint facts show that medical defendants delayed or denied necessary medical care with deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017).  Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available.  *See Farmer v. Brennan*, 511 U.S. 825, 834-7 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).  "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016).

The Complaint makes plausible that Hutchinson suffered from a serious medical need, severe opioid addiction; that the medical defendants knew of the need; and that they nonetheless refused to provide adequate treatment to stave off the harmful rollercoaster of relapse and withdrawal.  Repeatedly, Hutchinson admitted to the Centurion Defendants his heavy drug use and the physical injuries he sustained every time he tried to withdraw from the powerful narcotics without medical assistance.  Hutchinson also pleaded with them for placement in the MAT program, which is designed to manage symptoms of withdrawal and maximize chances of sobriety.

And yet, no Centurion Defendant took any steps to secure such treatment for him.  Instead, each relied on the Centurion policy of refusing admission into the MAT program because Hutchinson did not arrive at WCI already enrolled.  If this "policy" is as arbitrary and draconian as the Complaint suggests, then it too may serve as a basis for liability pursuant to *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

Where a municipality adhered to an unconstitutional policy or custom which caused plaintiff's constitutional injury, a *Monell* claim may proceed.  *See, e.g.*, *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997); *Kirby v. City of Elizabeth City*, 388 F.3d 440, 451 (4th Cir. 2004), *cert. denied*, 547 U.S. 1187 (2006); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).[2]  The Complaint makes plausible that at a minimum, the Centurion Defendants adhered to what appears an arbitrary no-admission policy into the MAT program for anybody not already enrolled upon transfer, and without regard to the prisoner's medical needs.  *See* ECF No. 17-2 (Centurion admitting that "WCI currently does not initiate the [MAT] program for suboxone and we *only maintain the current patients already receiving the medication.*") (emphasis added).  Indeed, the Centurion Defendants admit as much, arguing the MAT program is "categorically unavailable" to "any inmate who was *not* receiving Suboxone within 90 days of admission to WCI."  ECF No. 14-2 at 14 (emphasis added).  And although the Centurion Defendants obliquely refer to Hutchinson having not met "established eligibility criteria" for the MAT program, they have not shared with him or the Court this supposed "criteria."  By contrast, the Complaint facts (buttressed by the medical records) show that Hutchinson's protracted and serious addiction, combined with the severe physical side effects of his many attempts to recover on his own, belies

---

[2]     *Monell* liability has been extended to private entities operating under color of state law.  *See, e.g.*, *West v. Atkins*, 487 U.S. 42, 49 (1988); *Polk Cty. v. Dodson*, 454 U.S. 312, 320 (1981); *Rodriguez v. Smithfield Packing Co., Inc.*, 338 F.3d 348, 355 (4th Cir. 2003); *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999).

that exclusion from the MAT program is anything other than irrational, arbitrary and punitive. Based on this, the Centurion Defendants' motion must be DENIED.

**IV.     Conclusion**

In sum, the Court grants the Correctional Defendants' motion to dismiss (ECF No. 18) and denies Centurion Defendants' motion to dismiss or alternatively for summary judgment (ECF No. 14).  The Court grants Plaintiff Christopher Hutchinson's motion for court appointed counsel (ECF No. 26) and denies without prejudice his motions to add defendants and to file an amended complaint (ECF Nos. 9 & 23).   Once counsel is appointed, counsel will meet and confer with counsel for the Centurion Defendants and propose an amended scheduling order that will include a deadline for Hutchinson to amend the pleadings.

A separate Order follows.


__July 2, 2026__                                                      _____/s/_____
Date                                                                     Paula Xinis
                                                                         United States District Judge